is Gorecki v. Commissioner, Social Security, 23-13863. Mr. Subaraman, have I pronounced that correctly? Subaraman, Your Honor.  Thank you. I hear for the appellant and Mr. Salzman here for the appellee. Mr. Subaraman, whenever you're ready. Good morning. May it please the Court. My name is Mahesh Subaraman. It is my privilege to represent Social Security Claimant Rachel Gorecki. This case is about the Federal Vacancies Reform Act and the operation of the Act's time limits governing acting service. I'll start by addressing the elephant in the room. Five circuits have rejected the argument that we are presenting to you today. So to go to the question or the point that you made at the beginning, Judge Newsome, the reason why we think those five circuits don't matter and why this Court should break with them is because Eleventh Circuit precedent speaks to virtually every term in the statute and is supportive of the construction that we give it. Maybe begin with the term or. So starting with the term or, I think Eleventh Circuit precedent speaks aptly when it says the thing with or is it can sometimes mean or and it can sometimes mean and, and certainly the Supreme Court has introduced greater complexity to that equation with its recent decision in the Pulsifer case. So I don't know whether or is something that settles this case. I think that the emphasis here really should be on the prefatory clause and the person serving as. But to go directly to does or support our argument, we think it does. And the reason why it supports our argument is as Judge O'Connor explains in his decision, it establishes two alternative mutually exclusive lengths of service. So a person is either serving 210 days or the minute a nomination is made within that 210 day period, they're serving under the terms of 3346B while the nomination is pending. Why necessarily does or have to be so radically interpreted? Why couldn't it mean one or two or both? Well, two reasons. One, because when Congress wants to say one or two or both, it usually says or both in the statute. We provide examples of that. How do we, how do we know that? Well, let me give you another way. And if you say when Congress says this, this is what they mean, you've rigged the question.  And I think, Your Honor, the other way of looking at it is to ask, I mean, this court has said over and over again, when Congress knows how to say something, that's a good indication when they don't say it, that they don't mean it. And one example of this is if you look at the bankruptcy code, the definition section of the bankruptcy code expressly says or here is not meant to be read exclusively. And then there's another statute where that's equally true. This the FVRA contains multiple definition sections. It has one in 3345, it has another one in 3348. If they had wanted or to be read inclusively rather than exclusively, they could have said so. But, Your Honor, you know, I don't want to push back on the panel. If it has more questions about or, I'm certainly happy to answer them. But I think that this case comes down to the words that largely the other five circuits have been ignoring in the statute because they run directly counter to the interpretation that they're advancing. And that's the first four words, relevant words of the prefatory clause here, the person serving as. Now, what's interesting about that language, this court obviously has confronted the question of whether the term officer encompasses presently serving officers and formerly serving officers. That was the major point of contention in the Pate decision that this court decided on bank. It was also the major point of contention in the Georgia versus Meadows decision looking at federal officer removal. I guess in fairness though, it doesn't just say the person serving as. It goes on. Oh, absolutely. Right. So make sure you get to the, you know, as described under section 3445. And I'm happy to say, and you've reviewed the briefing, we sentence diagram the heck out of the prefatory clause. And so you're right. It goes on to say the person serving as an acting officer as described under section three, three, four, five. What courts looking at this language have effectively done is delete the words, the person serving as out of it and just treat it as if it said an acting officer as described under section three, three, four, five. And if you delete the words, the person serving as, then it might be plausible to read just an acting officer as described under section three, three, four, five to not have a temporal component to it. And so it could apply to a future acting officer once a nomination is made or a previous one that was serving and then there was a lapse and then the nomination was made. But the reason why the person serving as changes the equation here is because the plain ordinary meaning of serving is presently serving. And we know that because serving is a present participle. This court presumes that the ordinary principles of grammar apply when construing a statute and applies ordinary dictionary definitions when construing terms. And as we have on our page six of our reply brief, we provide the ordinary common meaning of serving, which is employed at the present time. There is no dispute in this case that when the nomination of Andrew Saul occurred in April of 2018, Nancy Berryhill was not presently serving as acting commissioner. She therefore could not take advantage of the second period of service that's authorized by three, three, four, six, A. And the government on page 19 of its reply brief, I think, in a way, tacitly concedes that point to the extent it says, well, when it says the person serving as, it doesn't mean someone merely qualified to serve as, it doesn't mean someone who formerly served as, it means someone presently serving. But then they skip past that language and say, well, really, the purpose of this language is to distinguish FVRA-based acting officers from non-FVRA-based acting officers. And I get that point. And that might be part of what this language does. But it's not all that it does. And the words the person serving as introduce a temporal component that, as this court observed in Westchester, means presently, continuously, not referring to something in the past that has ended or something in the future that might happen. Why would Congress want to do that? It's a great question, Judge Carnes. I think the reason why Congress wanted to do that, we squarely come at this in the opening brief and the reply brief, is because they wanted to do two things with the FVRA. They wanted to minimize periods of acting service. And they wanted to advance prompt timely, not merely nominations, but timely nominations. They wanted nominations to come in within that 210-day period of acting service. So all, but the problem with that is, all the administration has to do is wait till the 209th day to nominate. Absolutely, Your Honor. And Congress can't. So that blows your theory about how finely tuned this two provisions are. Not at all, Your Honor. I mean, it's up to Congress to say how long it's willing to wait. What it has said is we're willing to wait 210 days. And if we happen to not be in session, or at least the Senate is not in session, a little bit more per 3348C, but we're not willing to wait 300 days or 400 days beyond the time limits spelled out in this statute. So under your interpretation, just so I understand, basically a vacancy occurs, the executive has 210 days to nominate someone, and if you don't nominate within 210 days, then there can be no acting person ever, right? No, that's not correct, Your Honor. And the reason for that is... Well, then explain, yeah, just explain why I'm wrong. So at least in particularized to the Social Security context, there's a separate provision under the Social Security Act, which allows the president to name an acting commissioner of Social Security at any time. And the courts have interpreted those types of independent provisions to be, you know, essentially offer... Okay, so you're pointing me to some other statute. I guess I'm talking under this statute. What you're saying under this statute is you have 210 days and then no more acting.  If we're just looking at the FVRA, we're not looking at other things like recess appointments or other ways that the president could deal with the problem. If you're just confined to the FVRA, and the question is, if I want my acting to continuously serve during a nomination, how do I ensure that? The answer is make the nomination during the 210-day period. Because if you don't... But if you don't, then the person who's serving as acting can no longer serve as acting. But also, you can't then go back and nominate someone and then have an acting pending that nomination, right? So you can nominate someone, but the acting doesn't come back up. Right.  And then the... I guess, so if that's... I guess what I'm trying... Your theory is that Congress was trying to incentivize these nominations, and that seems incorrect to me under your reading. Under your reading, they're actually not incentivized to nominate somebody because nominating somebody after 210 days doesn't give you the ability to have an acting. So to be clear, Your Honor, I want to make sure I'm absolutely clear on this. They didn't just want to incentivize nominations. They wanted to incentivize timely nominations. And the word timely appears all over the Senate report that accompanied the initial draft of the FVRA. And the reason for that is Congress previously attempted this type of setup with the executive branch. In 1988, it passed an allowance of 120 days of acting service with the tolling provision if the president advanced a nomination. Ten years later, Congress looked at the results, and what it found was that the vast majority of positions were being filled by actings, and nominations were either not coming in at all or coming long after the 120-day period had expired. So they wanted nominations to come in in a timely manner. And you're right, Judge Brasher. Under this scheme, if the president doesn't nominate someone within that 210-day period, then his choice, what he has to do, at least for purposes of this statute, is nominate someone who the Senate can quickly confirm. That exerts significant pressure on the president to get it done within 210 days. Let me, just on this same point, I guess, I understand your reading of the statute. It just seems odd to me, if that was what Congress wanted to do with these statutes, why wouldn't they just say that, why wouldn't they just write it where you've got for no longer than 210 days, beginning on the date the vacancy occurs, unless a nomination for the office is submitted to the Senate? Why would you have this like, or there, and why would you have two separate categories? It just seems like a really odd way to write the result that you're suggesting. Maybe that was what they were trying to do. It just seems very odd. Well, Your Honor, I don't think it's odd when you also consider the fact that the language in 3346 works hand-in-glove with the language in 3348. And 3348 is the penalties provision, which provides that, and I see my red light is blinking. May I? Yeah, just finish up in response to Judge Brasher. So the language in 3348 has to be factored into this, and under 3348B, what Congress said was, if a person, unless a person is performing in accordance with all of the timing and other requirements that are preceding in the statute, then the office shall remain vacant, full stop. When Congress initially drafted that provision, they had language which came after the office shall remain vacant to say, the office shall remain vacant until the President submits a first nomination. Congress knew that the language of 3346A2 by itself didn't affect a springback provision, so they initially considered language that would do that under 3348, but in the final bill that they enacted, they omitted that language, and that's why we have the statute that we do. Okay. Very well. You've got some rebuttal time remaining. Let's hear from Mr. Salzman. Thank you, Your Honors, and may it please the Court, Joshua Salzman for the Commissioner. I think there are three textual features of the statute that unequivocally point in our direction, and I think the one feature of the statute that Ms. Garecki highlights only serves to confirm that her reading is not tenable. So the three things I'd point the Court to first are the or clause, obviously, because it joins them and sets them on equal footing. It doesn't subordinate the second clause, the A2 provision to A1. It's not an unless. It's not an except that. It says it stands on equal footing. Second, A2 says once a first or second nomination occurs. It doesn't specify any other restriction. And the third thing I'd emphasize is that A2 has a start date. A2 says once that nomination is made, somebody can serve from the date of that nomination while the date is pending in the Senate. Now, under Ms. Garecki's reading, all of the service has to be continuous, and as a result, you wouldn't need a start date in A2 because the start date would always be the same. It would be the emergence of the vacancy. As a result of all of those factors, I actually think Mr. Subaraman is not correct when he says that he's advocating for these two provisions to be mutually exclusive because he doesn't think that A1 and A2 are pure alternatives because if you were looking at A2 in isolation, then it would just be from the date of the nomination while the nomination is pending before the Senate. And under his reading, you can get both as long as the nomination occurs within the first 210 days. You can get from the emergence of the vacancy, which is in A1, plus you can get through the end of the nomination being pending before the Senate, which is in A2. So he is willing to combine them. He's only willing to do it under certain circumstances when that's not what the statute says, and as Judge Brasher, I think, pointed out earlier, there was a much more sensible way of writing that. Now, against all of that, his big point is to highlight the words serving as an acting officer under Section 3345. And under his reading of serving, you can only serve if you are already serving. Now, the problem with that is the preparatory clause gets distributed across A1 and A2. So anything he says is true of A2 of that second period of service has to be equally true of that first 210-day period. And as a result, if you have to be already serving to serve for purposes of A2, that also has to be true under A1. And as the Eighth Circuit recognized in the Dahl decision and the Fourth Circuit recognized in the Rush decision, that simply doesn't make sense, that somebody, even in their first initial period of service, has to already be serving to serve. So I think that that really just blows up his entire preparatory clause-based argument. And there's no reason to go there because there's a much more sensible construction of the preparatory clause. I'm glad my colleague referenced the Pate decision. I think Judge Brasher's concurrence in that decision explains. We read statutes. You don't cherry-pick words. You don't look at serving stripped out of context. You look at the entire clause and the entire context. And the context for the preparatory clause is an acting officer serving as described in Section 3345. And that's important. That's a meaningful restriction because Section 3345 is the clause that explains and authorizes acting service under the Federal Vacancies Reform Act. But as was referenced earlier, there are other statutes out there that do authorize acting service, including one that's specific to the Office of the Commissioner of Social Security. And as a result, what that preparatory clause does is it restricts the time limits to just FVRA service. So if, for example, you are serving as an acting officer under that statute that's specific to the Office of Commissioner of Social Security or one of those other offices that have kind of bespoke provisions authorizing the nomination of acting provisions, then those time limits don't apply. I don't think we need to get beyond text here, and I'm very happy to take any questions the Court has about text. Since Mr. Subaraman brought up both sort of some of the policy issues here and some of the legislative history, I'm happy to speak to both of them. I think we have very good answers on both of them. And in particular, to the extent the Court is concerned, why would Congress have wanted it to be his way? You'll see that argument addressed in the Fifth Circuit SIGO decision, the final section. It explains why, just from a common-sense practicality standpoint, the government's construction makes much more sense here, because if the ability to have an acting officer is irrevocably lost after 210 days, then once the President makes his nomination, once he's done his share of the process, you're still without an acting officer, and then Congress is putting pressure on itself. The fault then lies with Congress to either take the President's nominee or to have the agency not have somebody in place who's able to perform the important functions. And also, I don't think we need to go to legislative history here. I can speak to that, but otherwise, unless the Court has any questions, I'm happy to sort of rest on our briefs and on this presentation. Okay. Very well. Thank you very much. All right. We've got five minutes of rebuttal time. Would you, I guess, maybe begin with his critique of your prefatory clause argument? I have to confess that I worried about the same thing, that we've got like this infinite regress kind of turtles-all-the-way-down problem. It's absolutely false. The Eighth Circuit's analysis about there being a logical contradiction isn't true, and we know that because the facts of this case prove it. Nancy Berryhill started serving as an acting officer on January 21, 2017, before the 210-day period started in this case. The 210-day period started in April of 2017. In a variety of ways- But I guess it's his critique that you might, in your heart of hearts, think that she wasn't lawfully there. Oh, no. Not at all, Your Honor, because our point, I mean, the Eighth Circuit's analysis, which he is echoing here and had not echoed in previous arguments, is that there's a logical contradiction that a person cannot possibly be serving as an acting officer before the 210-day period begins. And what the statute says is, no, actually, you can be serving as an acting officer before or at the time the 210-day period starts. We know that because Nancy Berryhill was serving under the 90-day transitional window that's afforded under, I believe, 3349A. We know that because of 3346C, which is right below all of these provisions, that says that if a vacancy arises while the Senate or the Congress has adjourned sine die, the 210-day window won't start until the Senate is back in session. And we also know it from the language of 3345 and 3346, which says that it's from the moment that the vacancy arises. And if you have a succession order, which automatically puts someone in place the minute that a vacancy arises, or it's a first assistant who's automatically popping up in place under the terms of 3345A1, in all of those circumstances, someone is serving at the time or before the time period in the 210-day period starts. So there is no logical contradiction. If the government is right in their interpretation, then Nancy Berryhill wasn't lawfully serving between January and April of 2017. So I appreciate that point. But this case only goes to show why the Eighth Circuit was wrong to recognize a logical contradiction that doesn't exist in the statute. There are a couple of other points in the critique that I want to reference. He talks about the use of the word once. Once is a subordinating conjunction. And I know we're all grammar nerds here, but a subordinating conjunction basically means that whatever follows it is dependent on whatever precedes it. What precedes it here are the words the person serving as an acting officer as described under section 3345 may serve in the office. So it's that language that temporarily, as a matter of time, takes precedence and asks the once is, is a person serving? And then if they are, you can go into the language that once opens the door to. So to then kind of speak to this issue of, you know, does this make sense in terms of the structure and the purpose of the statute? Judge Brasher, I'd encourage you to look at 3348C. If you have any doubts about our interpretation, I think 3348C really cements the point. Because in that provision, what they say is, look, if the 210th day happens to fall on a day that we're not in session, the Senate, then we're extending it to the next day that we're in session. But not just the next day we're in session, the next day that we are receiving nominations. Now, if the government's interpretation is right, 3348C is absolutely meaningless. What's the point of extending the 210th day if whenever the President submits a nomination, it automatically springs back in acting? The only reason you have 3348C in the statute is because the 210-day period cabins when the Senate will accept a nomination for FVRA purposes. And finally, I want to close on this point. Listening to my opponent's argument, I didn't hear anything about dictionaries. I didn't hear anything about grammar books. I didn't hear anything about comparable statutes using language like this. I didn't hear anything about this court's case law necessarily dealing with terms like present participles or similar language. And the reason for that is because all of the courts that have interpreted the statute so far to mean what the government says it means, they've been looking to purpose. They've been looking to history. They've been looking to what they think will make this statute, in their view, work the best way possible. But that's not how the 11th Circuit reads statutes. Textual interpretation is a promise to the people that in understanding the meaning of laws, that we don't have to look at oodles of legislative history. We can just go to a dictionary and find out what the meaning of words are and then apply them. And here, I did not hear the government say that the meaning of serving, ordinarily understood, encompasses someone who is formally serving, someone who is merely qualified to serve, someone who is eligible to serve. All of that language doesn't appear in the definition of serving. Serving means presently serving at the time, and there is no dispute here that Barry Hill was not presently serving at the time that the nomination was made. And for that simple reason, the court should reject the decisions of the other circuits and follow the plain text. Okay. Very well. Counsel, I didn't want to interrupt your argument time, but I don't mind interrupting or imposing on your non-argument time. You've been in five circuits, none of which, as I understand it, you've garnered a single judge. And I count 30 district court decisions. You got three of them, but then two of them got reversed, and one of them affirmed AOJ on other grounds, as I understand it. Do you have clients raising this same issue in the other, I guess it's six courts of appeals? No, Your Honor, I don't. This is my last circuit in terms of raising this argument. And I will say, Judge Karnes, one of the district courts, or at least I would say two of the district courts that have squarely addressed this issue, I would particularly encourage the court to carefully reach Senior Judge Teilborg's decision in the Foster case. It is a master stroke in analyzing the language of the statute and something not emulated in any of the circuit decisions. But not to read the decision reversing that. Well, actually, no decision has reversed Judge Teilborg. Judge Teilborg is in the District of Arizona, and no Ninth Circuit case has addressed this  Okay. The issue. I thought that the three district courts that had ruled in your favor, and you're obviously more familiar with this than I am, two of them were reversed. That's true, Your Honor. And the third one, the AOJ basically was affirmed anyway. Not exactly, Your Honor. May I briefly set the record as I understand it here straight? So there's the Bryan T.D. decision from the District of Minnesota. That was reversed by the Eighth Circuit. There's the SIGO case in the Fifth Circuit. That reversed essentially a decision by Judge O'Connor in a different Social Security case finding that these claims had merit. The last case, the last man standing as it were, is Senior Judge Teilborg in Arizona. And what he did was kind of interesting. What he said was, you're absolutely right, 210-day limit doesn't allow Nancy Berryhill's acting service. But then I'm going to conjoin to this the question of remedies. And he looked to the Supreme Court's recent decision in Collins, which had talked about, well, you need to show a causation between a removal restriction and an appointments claim in order to demonstrate that you're entitled to relief. And he said, well, I think that that may preclude relief here, so therefore you lose. That was an incorrect application of Collins, which is limited to removal restrictions and not to whether someone's appointed. But not one that you've repealed. But not, well, I did not litigate that case, Your Honor. I wish I had. I mean, Judge Teilborg's decision is excellent, but he did the work, and I encourage the court to consult that decision closely. I've taken up enough of your time. Thank you. Very well. Thank you both. All right, that case is submitted. We'll move to the fourth and final case of the day.